**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| TRI-VALLEY CARES, *et al.*, | No. C 03-3926 SBA |
| Plaintiffs, | **ORDER** |
| v. | [Docket No. 163] |
| UNITED STATES DEPARTMENT OF ENERGY, *et al.*, | |
| Defendants. | |

Before the Court is plaintiffs Tri-Valley Cares, Nuclear Watch of New Mexico, Marylia Kelly, Janis Kate Turner, Tara Dorabji, Henry C. Finney, and Catherine Sullivan's motion for an award of attorneys' fees [Docket No. 163]. After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. *See* FED. R. CIV. P. 78. For the reasons that follow, the Court GRANTS the plaintiffs' motion.

## BACKGROUND

Defendants United States Department of Energy (Department) and National Nuclear Security Administration planned to construct a Biosafety Level 3 (BSL-3) lab at the Administration's Lawrence Livermore National Laboratory (Livermore) and Los Alamos National Laboratory (Los Alamos). Compl. at ¶ 15. Defendants intended that this lab will be used to detect and isolate microorganisms and treat victims of bioterrorism. Docket No. 82, at 2. Livermore maintains on-site microbiology laboratories equipped to operate at Biosafety Levels 1 and 2, but does not have an on-site microbiological laboratory that meets the requirements of BSL-3. *Id.* at 3. The Department determined that future work at Livermore required construction of an on-site laboratory that can safely and securely handle and store infectious organisms that require BSL-3 protocols. *Id.* at 4.

Pursuant to the National Environmental Policy Act (NEPA), the Department prepared an Environmental Assessment to evaluate the reasonably foreseeable impacts of the proposed laboratory on the environment. *Id.* at 4-5. The Department published a draft Environmental Assessment for the

Livermore BSL-3 facility on July 24, 2002 and accepted public comments on the proposal until September 7, 2002. *Id.* at 4. In December 2002, the Department concluded that construction and operation of the lab would not significantly impact the environment and issued a final Environmental Assessment and Finding of No Significant Impact. *Id*. Plaintiffs challenged the adequacy of defendants' compliance with NEPA and alleged that the Department failed to respond to requests for public information, violating the Freedom of Information Act (FOIA). Compl. at ¶ 2.

In August 2003, plaintiffs filed a complaint against several discrete actions by the Department under NEPA and FOIA. On December 15, 2003, the parties entered a stipulation agreeing to resolve the matter on cross-motions for summary judgment. Docket No. 37. The stipulation also provided that in order "to facilitate expeditious resolution of this action through motions for summary judgment, and to avoid forcing the parties and this Court to expend unnecessary resources addressing a request for preliminary injunctive relief," defendants agreed not to begin operations prior to May 15, 2004, and plaintiffs would not seek preliminary injunctive relief prior to April 15, 2004. *Id.* at 2-3.

On January 22, 2004, the Department withdrew its approval of the Los Alamos BSL-3 Environmental Assessment, citing its duty under NEPA to prepare an environmental impact statement (EIS). *See* Docket No. 51, at 4. Thus, this Court only reviewed the Livermore BSL-3 Environmental Assessment.

Defendants filed a motion to strike extra-record declarations submitted by plaintiffs Tri-Valley Cares, Nuclear Watch of New Mexico, Marylia Kelley, Janis Kate Turner, Tara Dorabji, Henry C. Finney, and Catherine Sullivan in support of plaintiffs' motion for summary judgment. The Court allowed three declarations in whole and four declarations in part, excluding eight declarations.[1]

On defendants' cross-motion for summary judgment, the Court found in defendants' favor on all issues and all claims in September 2004. Docket No. 128. In November 2004, plaintiffs filed a

---

[1] The Ninth Circuit affirmed this Court's exclusions because those statements contained impermissible legal conclusions, opinions from lay witnesses, or political statements; raised only remote and highly speculative consequences; improperly raised information that became available after the agency decision-making process; or were cumulative. Docket No. 157, at 5-6. *See generally* Docket No. 121.

notice of appeal. Docket No. 129. In October 2006, the Ninth Circuit affirmed in part and reversed in part this Court's summary judgment order and found that "an Environmental Assessment that does not consider the possibility of a terrorist attack is inadequate." Docket No. 157, at 4 (citing *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n,* 449 F.3d 1016, 1035 (9th Cir. 2006)). Pursuant to the Ninth Circuit's judgment, this Court remanded the case to the Department "to consider whether the threat of terrorist activity necessitates the preparation of an Environmental Impact Statement." Docket No. 150. This Court then entered a judgment, pursuant to Federal Rule of Civil Procedure 58, on plaintiffs' uncontested motion. Docket No. 167. On December 30, 2006, plaintiffs filed this motion for attorneys' fees under Equal Access to Justice Act, claiming "prevailing party" status on their two NEPA claims challenging the Department's Environmental Assessments for its proposed Los Alamos and Livermore BSL-3 facilities. Pls.' Mot. at 4.

**LEGAL STANDARDS**

The Equal Access to Justice Act (EAJA) provides that, "a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), . . . brought by or against the United States." 28 U.S.C. § 2412(d)(1)(A). The statute provides that the award shall be granted "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.* Section 102 of NEPA requires federal agencies to prepare a detailed statement on the environmental impact of any proposed major federal action "significantly affecting the quality of the human environment." 42 U.S.C. § 4332(1)(C)(i).

**A.    Prevailing Party**

While the EAJA contains no applicable definition of "prevailing party," the Court should consider claimants "'prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *United States v. Real Property known as 22249 Dolorosa St.,* 190 F.3d 977, 981 (9th Cir. 1999) (quoting *National*

1    *Wildlife Fed'n v. Federal Energy Regulatory Comm'n*, 870 F.2d 542, 544 (9th Cir. 1989) and *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

However, the success must be based on either a judgment on the merits or a settlement contained in an enforceable consent decree. *Buckhannon Bd. & Care Home Inc. v. West Virginia Dept. of Health and Human Res.,* 532 U.S. 598, 603 (2001). The fact that the lawsuit is a "catalyst" for some success beyond a decision or consent decree does not entitle the beneficiary to claim he or she is a prevailing party. *See id.* at 604-05.

**B.     Substantial Justification**

"'Substantial justification' under the EAJA means that the government's position must have a 'reasonable basis both in law and in fact,' *i.e*., the government need not be 'justified to a high degree,' but rather 'justified in substance or in the main'— that is, justified to a degree that could satisfy a reasonable person." *Wang v. Horio,* 45 F.3d 1362, 1364 (9th Cir. 1995) (quoting *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1230 (9th Cir. 1990) (quoting *Pierce v. Underwood*, 487 U.S. 552, 568-69 (1988))).

Whether substantial justification exists depends on two questions: "first, whether the government was substantially justified in taking its original action; and second, whether the government was substantially justified in defending the validity of the action in court." *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988).

**ANALYSIS**

The first issue before the Court is whether plaintiffs are eligible for attorneys' fees as prevailing parties under the EAJA. Secondly, the Court must determine whether the government acted with substantial justification in granting the original Environmental Assessments for the Los Alamos and Livermore BSL-3 facilities even though the government withdrew the Los Alamos Environmental Assessment and the Ninth Circuit remanded the case back to the Department to examine whether the threat of terrorist activity necessitates an Environmental Impact Statement.

4

**A.      Whether Plaintiffs Prevailed as Parties for Purposes of Awarding Attorneys' Fees**

Plaintiffs argue that they prevailed on their claims challenging the Department's Environmental Assessments for its proposed Los Alamos and Livermore BSL-3 facilities because the Department voluntarily withdrew the Los Alamos Environmental Assessment and the Ninth Circuit ordered the Department to re-examine the Livermore Environmental Assessment to consider the threat of terrorist attacks. Defendants argue that although plaintiffs prevailed on one claim, plaintiffs are not entitled to fees for unsuccessful claims that are distinct from the claim on which plaintiffs prevailed. Defs.' Opp'n at 4.[2] However, plaintiffs can claim "prevailing party" status if they succeed on *any* significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. *Hensley*, 461 U.S. at 433 (emphasis added). Plaintiffs do not need to show success on all issues to qualify as a prevailing party.

The Department's voluntarily withdrawal of the Los Alamos Environmental Assessment falls under the "catalyst theory" that the Supreme Court specifically rejected in *Buckhannon*. *Buckhannon*, 532 U.S. at 604-05. The fact that the lawsuit is a "catalyst" for some success beyond a decision or consent decree does not entitle the beneficiary to claim he or she is a prevailing party. *Id.* Plaintiffs sought an "order requiring defendants to withdraw their [Findings of No Significant Impact] for the Los Alamos and Livermore BSL-3 facilities." Compl. at 27. Without a court order, the Department withdrew the Finding of No Significant Impact and Environmental Assessment for Los Alamos in January 2004. *See* Docket No. 51, at 4. Although plaintiffs argue they "succeeded in *impelling* [the Department] to conduct a new environmental review for its [Los Alamos] BSL-3 facility,"[3] the parties agreed to resolve the matter on cross-motions for summary judgment to avoid expending "unnecessary resources addressing a request for preliminary injunctive relief." Defs.' Opp'n at 2 (quoting Docket No.

---

[2]     The Court need not decide whether the unsuccessful claims are related to the prevailing claim on this motion because that issue only arises in determining the amount of fees to award. Plaintiffs address their entitlement to fees and costs under EAJA, not the amount of fees and costs that should be awarded. Pls.' Mot. at 5.

[3]     Pls.' Mot. at 4 (emphasis added).

5

37, at 2-3).  The Court did not order the Department to conduct a new environmental review, nor did the parties bargain for that benefit.  Plaintiffs received a benefit beyond a decision or consent decree granted by this Court.  Thus, plaintiffs cannot be a prevailing party in the withdrawal of the Los Alamos Environmental Assessment for purposes of awarding attorneys' fees.

However, plaintiffs also sought a "declaration that [the Department] is in violation of NEPA." Compl. at 27.  The Ninth Circuit granted this relief in declaring that "an Environmental Assessment that does not consider the possibility of a terrorist attack is inadequate."  Docket No. 157, at 4.  Defendants admit that the Ninth Circuit's decision declared that the Finding of No Significant Impact "no longer constitutes a valid approval to conduct BSL-3 operations at [Livermore].  Such operations will not be conducted until the Department has conducted the further NEPA review required by the Court.  When such a review has been completed, a new NEPA decision will be issued."   Ex. 1 to Volker's Decl. Moreover, this Court entered a judgment in accordance with the Ninth Circuit's decision, and so the plaintiffs received this benefit by an order from both the Court of Appeals and this Court.  Docket No. 167.  The declaration that "the Department violated NEPA" poses a significant issue because BSL-3 operations have stopped until the Department completes its review of the potential effects of terrorist attacks.  Thus, plaintiffs prevailed on a significant issue and received a benefit sought by bringing the lawsuit.

**B.     Whether the Department was Substantially Justified in Issuing the Final Environmental Assessment for Livermore**

Because plaintiffs achieved "prevailing party" status under the EAJA, the burden shifts to defendants to show substantial justification in its actions.  28 U.S.C. § 2412(d)(1)(A);  *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991) (stating that "[o]nce a party's eligibility has been proven, an award of fees is mandatory unless the government's position is substantially justified").  Defendants urge the Court to consider the case as a whole in determining this inquiry by noting that defendants prevailed on the majority of the claims raised by plaintiffs.  Defs.' Opp'n at 10-11.  Defendants also argue the Department's failure to consider terrorist attacks was reasonably based on existing case law, and the

Department's litigation position was reasonable because defendants worked in good faith with plaintiffs. *Id.* at 11-14.  Plaintiffs respond that defendants rely on irrelevant factors, and the Court must only address whether the Department's decision not to consider the risk and impact of a terrorist attack was substantially justified.  Pls.' Reply at 6.

**1. Defendants' Reliance on the Mandate to Treat the Case as a Whole**

Defendants rely heavily on a Supreme Court case to justify consideration of the case as a whole.[4] "While the parties' postures on individual matters may be more or less justified, the EAJA -- like other fee-shifting statutes -- favors treating a case as an inclusive whole, rather than as atomized line-items." *Jean*, 496 U.S. at 161-62.  Defendants, however, take this statement out of context.  In that case, the INS petitioned the Supreme Court to reverse the lower court's award of fees during litigation to determine the fee amount awarded under the EAJA.  *Id.* at 156-57.  The INS objected to the award of "fees for fees" and presented a narrow question to the Supreme Court that only affected the eligibility for compensation for services rendered during fee litigation.  *Id.* at 156, 163.  The Supreme Court held that the district court's finding that the government lacked substantial justification acted as a one-time threshold for *fee eligibility*.  *Id.* at 160.  Here, defendants improperly rely on the same statement to assert that this Court must consider the case as a whole in conducting the *substantial justification* inquiry. Clearly, the Supreme Court did not intend that result.

In sharp contrast, the Ninth Circuit held that the time spent on unsuccessful legal theories may be considered only in determining the *amount* of an award.  *Southern Oregon Citizens Against Toxic Sprays, Inc. v. Clark*, 720 F.2d 1475, 1481 (9th Cir. 1983).  Because entitlement to attorneys' fees is the only issue presented here, defendants' argument must fail.

**2. Underlying Agency Conduct**

Defendants make two arguments in support of their position that the Department was substantially justified in issuing the Livermore Environmental Assessment: (a) the Ninth Circuit promulgated a new legal rule requiring the Environmental Assessment to analyze the possibility of

---

[4]       Defs.' Opp'n at 9 (citing *Commissioner, INS v. Jean*, 496 U.S. 154, 161-62 (1990)).

7

1  terrorist attacks which the Department could not have reasonably applied when making its decision, and
2  (b) the catastrophic release scenerio described in the Environmental Assessment covered the impacts
3  of any release, including one triggered by a terrorist attack. Defs.' Opp'n at 12-13. Plaintiffs respond
4  that defendants fail to show substantial justification in the initial action. They argue that the Ninth
5  Circuit did not create a new rule, but instead relied on existing case law in *Mothers for Peace.* Pls.'
6  Reply at 8. Further, plaintiffs argue the catastrophic release scenario does not account for the possibility
7  that a terrorist attack might result in an unfiltered release of toxic bioagents. *Id.* Moreover, they
8  contend that the Department cannot reasonably reconcile the Livermore BSL-3 facility's mission "to
9  respond to perceived future terrorist threats" with its failure to consider the possibility of a terrorist
10 attack because it is not a "reasonably foreseeable" occurrence under NEPA. *Id.* (italics omitted).
11 Defendants do not dispute plaintiffs' characterization of the facility's mission.[5] The Court agrees with
12 plaintiffs' reasoning; additionally, the government has failed to meet its burden of showing substantial
13 justification for failing to consider the possible effects of terrorist attacks.

14 ### *a. Whether the Ninth Circuit Created New Case Law in* **Mothers for Peace**

15 Defendants assert that the Ninth Circuit's reversal relied on a newly decided case, *San Luis*
16 *Obispo Mothers for Peace v. Nuclear Regulatory Comm'n,*[6] and when the Department issued the
17 Environmental Assessment, it based its decision on a reasonable application of existing case law. *Id.*
18 at 12. Plaintiffs contend that the Ninth Circuit did not create new law, nor did it explain "a hitherto
19 muddled point of law," but simply "applied existing law (and common sense) to a near-identical set of
20 facts and concluded that the government's near-identical position on those facts was, indeed,
21 unreasonable." Pls.' Reply at 8. Upon reviewing the Ninth Circuit's analysis of the case, the Court
22 finds that no new legal rule was created.

---

[5] Plaintiffs cite to the Environmental Assessment for the Proposed BSL-3 Facility at Livermore. *See* Ex. 9 to Pls.' Mot. for Stay Pending Appeal at 11 ("[Livermore's] pioneering work on biological agent (bioagent) detection and *counter-terrorism* technologies . . . are *key elements* of the . . . [National Nuclear Security Administration] mission.").

[6] 449 F.3d 1016, 1035 (9th Cir. 2006). *Mothers for Peace* was issued on June 2, 2006. Less than two weeks later, the parties argued this case before the Ninth Circuit on June 13, 2006.

In *Mothers for Peace*, the Nuclear Regulatory Commission decided not to consider the environmental effects of a terrorist attack on a Storage Facility for spent nuclear fuel because "the possibility of a terrorist attack [was] far too removed from the natural or expected consequences of agency action." *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n,* 449 F.3d 1016, 1021, 1028 (9th Cir. 2006). "That NEPA does not require consideration of the environmental impacts of terrorism is a legal, and not a factual, conclusion." *Id.* at 1027. Section 102 of NEPA requires federal agencies to prepare a detailed statement on the environmental impact of any proposed major federal action "significantly affecting the quality of the human environment." 42 U.S.C. § 4332(1)(C)(i). The Nuclear Regulatory Commission concluded that a possible terrorist attack's environmental impact was beyond a "reasonably close causal relationship," applying the "proximate cause analogy" used in a Supreme Court analysis[7] of Section 102. *Mothers for Peace,* 449 F.3d at 1029 (quoting *Metropolitan Edison*, 460 U.S. at 774). "Because the issue whether NEPA requires consideration of the environmental impacts of a terrorist attack is primarily a legal one, we review the NRC's determination . . . for reasonableness." *Mothers for Peace*, 449 F.3d at 1028 (citing *Alaska Wilderness Recreation & Tourism Ass'n*, 67 F.3d 723, 727 (9th Cir. 1995)).

The Ninth Circuit reviewed whether the Nuclear Regulatory Commission used the correct test in complying with NEPA based on existing case law. The Ninth Circuit explained that the events at issue "form a chain of three events: (1) a major federal action; (2) a change in the physical environment; and (3) an effect." *Mothers for Peace,* 449 F.3d at 1029. The Supreme Court in *Metropolitan Edison* was concerned with the relationship between events 2 and 3 and explicitly distinguished the case where the disputed relationship lies between events 1 and 2.[8] *Id.* (quoting *Metropolitan Edison,* 460 U.S. at 779 n.9 ("The situation where an agency is asked to consider effects that will occur if a risk is realized,

---

[7] *Metropolitan Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 773 (1983).

[8] In *Metropolitan Edison*, the Supreme Court was concerned with the relationship between events (2), "the change in the physical environment, or the increased risk of accident resulting from the renewed operation of a nuclear reactor," and (3), "the effect, or the decline in the psychological health of the human population." *Mothers for Peace,* 449 F.3d 1029.

9

1  for example, if an accident occurs . . . is an entirely different case.")).

2  Distinguishing the situation in *Mothers for Peace* from *Metropolitan Edison,* the Ninth Circuit
3  relied on *No GWEN Alliance v. Aldridge,* 855 F.2d 1380 (9th Cir. 1988), to form the appropriate inquiry
4  for the specific set of facts presented. In *No GWEN*, plaintiffs argued NEPA required the Air Force to
5  consider the threat of nuclear war in the implementation of the Ground Wave Emergency Network
6  (GWEN). The Ninth Circuit held "that the nexus between construction of GWEN and nuclear war is
7  too attenuated to require discussion of the environmental impacts of nuclear war in an [Environmental
8  Assessment] or [EIS]." *Mothers for Peace*, 449 F.3d at 1029 (quoting *No GWEN,* 855 F.2d at 1386)
9  (internal quotations omitted). In *No GWEN*, the Ninth Circuit held that plaintiffs' claims were "remote
10 and highly speculative," and therefore, NEPA did not require their consideration. *Id.* at 1030. Then,
11 the Ninth Circuit recognized that the relationship of events in both *Mothers for Peace* and *No GWEN*
12 concerned (1) a major federal action (the licensing of the Storage Installation holding spent nuclear fuel)
13 and (2) a change in the physical environment (a terrorist attack). *Id*. After arriving at the appropriate
14 inquiry and considering the facts of *Mothers for Peace*, the Ninth Circuit determined that compliance
15 with NEPA requires consideration of the effects of a terrorist attack on the environment in the
16 environmental impact analysis statement. *Id.* at 1031.

17 The Ninth Circuit clarified the law in regards to a specific set of facts, but the legal rule of
18 reasonableness in reviewing a legal question remained the same. The court determined that the
19 appropriate inquiry is whether terrorist attacks are so "remote and highly speculative," (or, to use the
20 Department's language, not "reasonably foreseeable") that compliance with NEPA does not require
21 consideration of their potential environmental effects. *Mothers for Peace*, 449 F.3d at 1030 *and* Defs.'
22 Opp'n at 12. The Ninth Circuit concluded that "it was unreasonable for the [Nuclear Regulatory
23 Commission] to categorically dismiss the possibility of terrorist attack on the Storage Installation and
24 on the entire Diablo Canyon facility as 'too remote and highly speculative' to warrant consideration
25 under NEPA." *Mothers for Peace*, 449 F.3d at 1030. While the Ninth Circuit may have applied the

26
27
28

holding in *Mothers for Peace* to this case,[9] the Ninth Circuit only clarified which test to use and that the Court should review the reasonableness of the agency decision as a matter of law.[10] Defendants maintain that "[a terrorist attack] is not a 'reasonably foreseeable' occurrence under NEPA."[11] Instead of reviewing this agency decision under the reasonableness test formulated in *Mothers for Peace*, the Ninth Circuit simply reapplied the holding to a similar set of facts. *See* Docket No. 157, at 4. As a result, defendants' argument that the Department acted with substantial justification on the basis that it reasonably applied existing case law at the time of the decision cannot depend on the assertion that *Mothers for Peace* created new case law. For these reasons, defendants' argument fails to the extent that it asserts *Mothers for Peace* created a new legal rule.

Even if the Ninth Circuit created a new rule, defendants rely on distinguishable cases. Defendants argue that, when the Department made its decision, the existing case law stated that a terrorist attack is not a reasonably foreseeable occurrence. Defs.' Opp'n at 13. However, this argument must fail because, even under the reasonably foreseeable test, defendants do not respond to plaintiffs' argument that any reasonable person after the 9/11 attacks on the World Trade Center could foresee an attack on specific U.S. targets like the Livermore BSL-3 facility. Pls.' Mot. at 17. Moreover, the BSL-3 facility specifically engages in counter-terrorism efforts[12] -- logically, the facility would be a prime target for a potential terrorist attack. *See* Pls.' Reply at 8. Defendants only point to two non-binding cases, a Second Circuit case and a case from the Western District of Michigan, to proclaim that "all the caselaw existing at the time of the decision of which [the Department] is aware" supported their decision. Defs.' Opp'n at 13. This argument lacks merit.

---

[9] *See* Docket No. 157, at 4 ("Concerning the [Department's] conclusion that consideration of the effects of a terrorist attack is not required in its Environmental Assessment, we recently held to the contrary in [*Mothers for Peace*].").

[10] *See Mothers for Peace,* 449 F.3d at 1029-31.

[11] Defs.' Opp'n at 12.

[12] Pls.' Reply at 8 (citing the Livermore Environmental Assessment "[Livermore's] pioneering work on biological agent (bioagent) detection and counter-terrorism techonologies . . . are key elements of the . . . [National Nuclear Security Administration] mission.").

11

Plaintiffs have aptly distinguished these two cases based on the facts. In *City of New York*, the agency specifically analyzed the physical effects of a "high-consequence accident" and considered the consequences and probabilities of a "worst case" accident, relying on a study prepared for the Nuclear Regulatory Commission by Sandia Laboratories. *City of New York v. U.S. Dep't of Transp.,* 715 F.2d 732, 746-47 (2d Cir. 1983). In *Hirt*, the agency concluded that "no matter how the plutonium was dispersed into the air, the risk to human health was inherently slight." *Hirt v. Richardson,* 127 F. Supp. 2d 833, 839-840 (W.D. Mich. 1999). Here, the Department neither analyzed the effects of a release of biohazardous materials on Livermore and the surrounding Bay Area, nor did the Department rely on a study in lieu of this analysis. For these reasons, the Department's actions cannot be substantially justified based on these non-binding cases.

### b. Whether the Catastrophic Release Scenario Covers a Terrorist Attack

Defendants further contend that the catastrophic release scenario takes into account any accidental release, even a terrorist attack. Defs.' Opp'n at 13. Plaintiffs assert that the Environmental Assessment did not analyze the environmental effects where biohazardous material escapes the filtration system. Pls.' Mot. at 16. The Department considered a catastrophic release scenario triggered by earthquake, explosion, fire, or airplane crash. Docket No. 82, at 10. The Department determined that such events would reduce the consequences of a release because high temperatures, fire, sunlight, and wind dispersal generally render microorganisms innocuous. *Id.* This Court adopted that reasoning in its Order granting summary judgment. *See* Docket No. 128, at 14 (finding that plaintiffs had given the Court "no reason to question this statement—and they have certainly not demonstrated that relying on it would be arbitrary and capricious").

However, the Department did not consider an unfiltered bioagent release in the catastrophic release scenario. Docket No. 82, at 10-12. Plaintiffs argue that a reasonable person would assume that a deliberate terrorist attack would attempt to bypass or disable those air filters in order to expose the public to bioagents. Pls.' Mot. at 16; Pls.' Reply at 10. Further, plaintiffs assert that the combination of the "smoke, heat, increased air pressure or sprinkler activation due to fire could cause failure of the

1 facility's HEPA filters — allowing bio-agents to escape." Pls.' Mot. at 7 (citing Fulk Decl. ¶¶ 13, 23
2 (not stricken by this Court's order)). This Court noted that *Coxiella burnetti* (Q-fever) was used in the
3 Environmental Assessment because it is "highly durable, infectious, and transmissible, and has excellent
4 environmental survivability." Docket No. 128, at 11 (citations omitted). Moreover, the reason cited
5 by the Ninth Circuit for remand to the Department is the lack of consideration of the potential results
6 of terrorist attacks in the Environmental Assessment.[13] Thus, the Department's catastrophic release
7 scenario did not account for a possible terrorist attack because an unfiltered release was not considered.

8 Defendants argue that "the only caselaw of which [the Department] is aware" supported their
9 position. *Id.* (citing *Limerick Ecology Action, Inc. v. Nuclear Regulatory Comm'n,* 869 F.2d 719, 741-
10 42 (3d Cir. 1989) ("Neither the applicant's analysis nor the staff's analysis includes the potential effects
11 of sabotage; such an analysis is considered to be beyond the state of the art of probabilistic risk
12 assessment."). The Court dismisses defendants' reliance on this pre-9/11 case because that agency
13 relied on a policy statement which stated that "[t]he possible effects of sabotage . . . are also not
14 presently included in the safety goal. At present there is no basis on which to provide a measure of risk
15 on [this] matter." *Limerick Ecology Action,* 869 F.2d at 742. Here, the very purpose of the BSL-3
16 facility is to engage in counter-terrorist bio-technology in preparation for a terrorist attack. Docket No.
17 82, at 2. Thus, the case cited by the Department is inapposite because it was decided before the 9/11
18 attacks and because quantifiable risk is not at issue here.

19 With regards to exposing potential security vulnerabilities by providing a "roadmap," defendants
20 claim ignorance to any caselaw prior to *Mothers for Peace* which directly addresses that issue. Defs.'
21 Opp'n at 13. Plaintiffs argue that NEPA requires, at a minimum, a public summary following NEPA
22 procedures. *Cf. Scientists' Inst. for Pub. Info., Inc. v. Atomic Energy Comm'n,* 481 F.2d 1079, 1086
23 (D.C. Cir. 1973) (where the Court found that an "environmental survey" of the "broader implications"
24 of a nuclear breeder reactor project was not sufficient under NEPA unless the survey complied with
25 NEPA procedures). The Ninth Circuit declared that the Department violated NEPA procedures by

26
27 [13] Docket No. 157, at 4.
28
13

issuing an inadequate Environmental Assessment. Docket No. 157, at 4. Defendants have not demonstrated nor clarified specifically how an adequate environmental assessment would result in the disclosure of security vulnerabilities. Consequently, the Court is not persuaded that analyzing the environmental effects of a possible unfiltered release of bioagents requires the disclosure of security vulnerabilities. As a result, defendants' argument fails.

In sum, defendants argue that, when the Department made its decision, the Department reasonably applied case authority even though it failed to consider the possibility of a terrorist attack on a facility designed to handle terrorist attacks. Defendants seem to presume that finding relevant or precedential case authority constitutes the sole factor in making a reasonable decision, or that the lack of case law on the foreseeability of terrorist attacks creates a presumption of reasonableness.[14] Reasonableness, however, is not limited to consideration of case law. The Court must weigh additional factors, such as historical facts and the agency decision's consistency with policy statements.[15] As such,

---

[14] Defendants cite two cases to support their argument, *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1178 (D.C. Cir. 2005) (holding that the government was substantially justified because "when this suit was filed, there was no controlling Supreme Court authority or D.C. Circuit precedent.") and *Minor v. United States,* 797 F.2d 738, 739 (9th Cir. 1986). In *Taucher*, Judge Roberts (now Chief Justice Roberts) prefaced that conclusion with the general warning that "courts need to guard against being 'subtly influenced by the familiar shortcomings of hindsight judgment.'" *Taucher,* 396 F.3d at 1173 (quoting *Beck v. Ohio*, 379 U.S. 89, 96 (1964)). However, the Ninth Circuit, in *Mothers for Peace,* did not use hindsight judgment to deem the Nuclear Regulatory Commission's decision as unreasonable. Instead, it compared the Commission's stated goal of addressing terrorist threats to its decision not to consider terrorist attacks in its Environmental Assessment. *See Mothers for Peace,* 449 F.3d at 1031. Also, in *Taucher*, the D.C. Circuit applied a reasonableness test to an agency's determination of constitutionality of a securities regulation for the purposes of awarding fees under EAJA. *Taucher,* 396 F.3d at 1169-70. The legal question here and in *Mothers for Peace* does not involve a murky constitutional question, but simply an agency's decision not to consider terrorist attacks in an environmental impact analysis.

In *Minor*, the Ninth Circuit issued a one-page order finding that the district court did not abuse its discretion in holding that "the issues presented by the government were not 'subject to resolution by clear, controlling precedent,' and that this was a test case whose outcome would resolve a large number of similar disputes then pending administratively." *Minor,* 797 F.2d at 739. There, the Ninth Circuit held that the district court did not abuse its discretion in resolving a question of tax law. Thus, the case is inapposite because it does not support the assertion that relying on the lack of case law creates a presumption of reasonableness.

[15] *See Ka Makani'O Kohala Ohana, Inc. v. Water Supply*, 295 F.3d 955, 959 n.3 (9th Cir. 2002) ("Because this case involved primarily legal issues . . . based on undisputed historical facts, we conclude that the 'reasonableness' standard should apply to this case."); *and Mothers for Peace,*

14

defendants fail to show substantial justification in failing to consider a terrorist attack. Further, the lack of precedent prior to *Mothers for Peace* does not justify the Department's failure of consideration, nor does it create a presumption of reasonableness.

### 3. The Department's Litigation Position

If the Court finds that the Department was substantially justified in its original decision, the Court must then decide whether the government was substantially justified in defending the validity of the action in court. *Kali*, 854 F.2d at 332. Defendants point to extraneous issues that are not relevant to this inquiry, such as the parties' agreement on a briefing protocol in good faith to conserve resources, motions concerning the administrative record, and motions over extra-record declarations. Defs.' Opp'n at 14. Defendants argue that good faith in lawyering constitutes the government's conduct of the litigation. *Id.* However, defendants rely on a case that neither praises or condemns the government's lawyering, but asks whether the government's litigation was justified in light of the relevant law at the time. *See Oregon Envtl. Council v. Kunzman,* 817 F.2d 484, 498-499 (9th Cir. 1987).

Defendants raise the fact that all of the government's positions except one were upheld by this Court and the Court of Appeals. Defs.' Opp'n at 15. Yet, "the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified." *Kali*, 854 F.2d at 332 (quoting *Pierce v. Underwood*, 487 U.S. at 569). Thus, the argument remains unpersuasive. Critical to the substantial justification determination is not the number of arguments rejected or accepted but the substance of the matters in which plaintiffs prevailed.

Defendants also note that the Ninth Circuit issued *Mothers for Peace* after the challenged decision was made and the briefing complete. Defs.' Opp'n at 15. In fact, the decision came down on June 2, 2006, just 11 days before the parties appeared before the Ninth Circuit for oral arguments. Ex. 1 to Pls.' Reply. At that point, the Department's position clearly conflicted with *Mothers for Peace*.

---

449 F.3d at 1031 (noting that "it appears as though the NRC is attempting, as a matter of policy, to insist on its preparedness and the seriousness with which it is responding to the post-September 11th terrorist threat, while concluding, as a matter of law, that all terrorist threats are 'remote and highly speculative' for NEPA purposes").

15

1 However, plaintiffs do not argue that defendants unreasonably continued to argue the case in front of
2 the Ninth Circuit. Instead, plaintiffs suggest that defendants have failed to meet their burden of showing
3 substantial justification in their litigation position. Pls.' Reply at 12. The Court finds this argument
4 persuasive. Thus, even if the Department was substantially justified in issuing the Livermore
5 Environmental Assessment for the BSL-3 facility, plaintiffs are still entitled to attorneys' fees because
6 the Department fails to show substantial justification in its litigation position.

## CONCLUSION

Accordingly the Court GRANTS plaintiffs' motion for an award of attorneys' fees and costs [Docket No. 163] because defendants have failed to show substantial justification for its failure to consider a terrorist attack on the Livermore BSL-3 facility and its possible impact on the environment from exposure to dangerous bioagents. Further, no special circumstances make an award of attorneys' fees unjust.

IT IS SO ORDERED.

April 6, 2007

_Saundra B Armstrong_
Saundra Brown Armstrong
United States District Judge